MARC E. JOHNSON, Judge.
|?Defendant appeals the denial of his motion to suppress the evidence. For the reasons that follow, we affirm.
Defendant, Casey Aston, was charged in a bill of information on October 29, 2008, •with, one count of possession of pornography involving juveniles in violation of La. R.S. 14:81.1(A)(3). He pled not guilty and filed several pretrial motions, including a motion to suppress evidence. A hearing on the motion to suppress was held on September 19, 2011, November 10, 2011, and January 9, 2012. The trial judge took the matter under advisement and subsequently denied the motion on March 1, 2012. Defendant filed a writ application with this Court challenging the trial court’s ruling, which was denied. State v. Aston, 12-279 (La.App. 5 Cir. 3/28/12) (unpublished writ disposition).
Thereafter, on May 29, 2012, the State amended the bill of information to one count of attempted possession of pornography involving juveniles in violation of La. R.S. 14:27 and 14:81.1(A)(3). On that same date, Defendant withdrew his |snot guilty *1152 plea and pled guilty as charged under State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the denial of his motion to suppress evidence. In accordance with a plea agreement, the trial judge sentenced Defendant to 18 months at hard labor without benefit of parole, probation, or suspension of sentence.

FACTS

At the suppression hearing, Sergeant Terry Wright of the Bedford County Sheriffs Department in Virginia testified that he was assigned to the Internet Crimes Against Children Task Force. He initiated an investigation oh February 12, 2008, to identify and locate individuals who were trading images of child pornography over the internet using the “Gnutella Peer to Peer Network,” a file sharing system. To accomplish that task, Sgt. Wright used a software program called the “Wyoming Tool Kit,” which is not available for use by the general public. That software allowed Sgt. Wright to identify files as child pornography through a “secured hash algorithm” or “SHA” value, a mathematical code made up of a series of numbers and/or letters that act like a digital fingerprint of a file.
Once he set up the software, Sgt. Wright was presented with an “internet protocol” or “IP” address of a file in a computer that contained possible child pornographic images that were set to be shared with the public. Sgt. Wright explained that an IP address was assigned to a computer user by an internet service provider and that it functioned much like a physical address posted outside a house so the post office could deliver mail there. He learned that the internet service provider of the IP address at issue was Cox Communications. After issuing an administrative subpoena to Cox, Sgt. Wright learned that the subscriber for the IP address was- “Tom Aston” in Louisiana. At that point, Sgt. Wright forwarded the case to the Louisiana Attorney General’s Office.
|4Sgt. Wright testified that he was able to partially download the file in the instant case and that he recognized the “SHA” value of that file because he had seen it on previous occasions. When he viewed the file, which was a minute and a half long, it depicted a female child in diapers estimated to be under the age of .three, and a male subject, who took the child who was lying on a bed, removed her diaper, and after several attempts, penetrated the child’s vagina with his penis.
Randall Gohn, an investigator with the high tech crime unit of the Louisiana Attorney General’s Office, Department of Justice, testified that another investigator in his office, Gary Maranto, was given information from Bedford County in Virginia regarding an IP address that was leased in Louisiana and had been seen to have child pornography. Mr. Gohn supervised Mr. Maranto’s investigation. The complaint was reviewed, and the. file was found to be child pornography. They then located the address, which was 3100 Tennessee Avenue in Kenner, and verified that it was an inhabited dwelling that was currently occupied. At that point, they obtained a search warrant and executed it.
During the search, Defendant was found in his bedroom. He was advised of his rights, after which he gave a written statement. In his statement, Defendant admitted he had downloaded pornography, but that he had not “masturbated to anything younger than 16.” He stated that he “[djownloaded kiddie porn just to see ... what they really were.” Defendant also stated he had “downloaded younger, just to see though (youngest was 9).” He also described the search, terms he used to find child pornography, and he acknowledged that those files were in his shared folder. Defendant stated that no threats or prom *1153 ises were made to him for his statement. Additionally, Defendant signed a “Consent to Assume Online Identity and/or Search Online Accounts,” and he provided his us-ernames and passwords to investigators.
15At the conclusion of the hearing,' the trial court gave the parties time to brief their arguments. Defendant made the same arguments he makes on appeal; specifically, he argued that he had a reasonable expectation of privacy in the files on his personal computer, the administrative subpoena issued by the Commonwealth of Virginia was invalid because Louisiana citizens have expansive rights and a neutral magistrate did not “pass on the validity and probable cause prior to issuance” of the subpoena, and the actual search warrant should not have been issued because all the information in it was secondhand. The trial judge subsequently denied Defendant’s motion to suppress the evidence in its entirety.

DISCUSSION

In his sole assignment of error, Defendant contends the trial court erred in denying his motion to suppress all computer evidence. He maintains there were three separate searches and that all three were illegal. First, Defendant asserts that Sgt. Wright’s initial “search” of computers for possible child pornography was unlawful because he had a reasonable expectation of privacy in the electronic information stored on his computer. Second, Defendant contends the administrative subpoena issued by the Commonwealth of Virginia to Cox Communications for his subscriber information was unlawful because it was done without consent or probable cause. And, third, Defendant maintains that the actual search of his residence after investigators obtained a search warrant was unlawful because the search warrant was based solely on the word of Sgt. Wright, an out-of-state policeman, without an independent investigation by the Louisiana Attorney General’s Office.
Initially, it is noted that Defendant previously filed a writ application with this Court challenging the trial judge’s denial of the motion to suppress. This Court denied the writ “on the showing made.” State v. Aston, 12-279 (La.App. 5 Cir. 3/28/12) (unpublished writ disposition). The “showing” in Defendant’s writ application consisted of the argument contained in the writ application, the motion to suppress, the minute entry reflecting the ruling, the notice of intent to seek supervisory review, and the motion for stay.
On appeal, defendant makes the same arguments that he made in his writ application to this Court. The prior denial of a supervisory writ does not preclude reconsideration of an issue on appeal, nor does it prevent the appellate court from reaching a different conclusion. State v. Castleberry, 98-1388 (La.4/13/99); 758 So.2d 749, 755, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999). The transcripts of the suppression hearing and the exhibits introduced during the hearing, which are a part of the appellate record, were not attached to Defendant’s writ application and, thus, were not previously considered. Thus, we do not find the “law of the case” doctrine applicable to this case.
In a hearing on a motion to suppress, the State bears the burden of establishing the admissibility of evidence seized without a warrant. State v. Butler, 01-907 (La.App. 5 Cir. 2/13/02); 812 So.2d 120, 124. The trial court’s denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. Id.

*1154
Search of Computer by Sgt. Wright using Wyoming Tool Kit

Defendant . first argues that Sgt. Wright’s initial investigation where he “searched” computers for possible child pornography was unlawful because he did not give up any expected right of privacy in electronic information stored within his computer. The State responds that Defendant did not have a right to privacy in the contents of his computer since he made it available to the world by way of a peer-to-peer file-sharing network.
|7A defendant does not have Fourth Amendment privacy rights in computer files that he or she has shared on file-sharing networks such as Gnutella. In State v. Daigle, 11-1209 (La.App. 3 Cir. 5/2/12); 93 So.3d 657, writ denied, 12-1255 (La.11/16/12); 102 So.3d 30, the defendant pled guilty to one count of pornography with juveniles. On appeal, he argued that the detective violated his right to privacy by using the Wyoming Tool Kit to examine the SHA values for files the defendant freely shared with other “BearShare” clients. Citing federal jurisprudence, the Third Circuit found that the defendant had no Fourth Amendment privacy rights in computer files he shared on file sharing networks such as Gnutella, regardless of whether the defendant had logged onto the Gnutella network through clients such as “Lime[W]ire, Morpheus, BearShare, or Shareaza.” Id., 93 So.3d at 665.
Similarly, in State v. Dunham, 12-826 (La.App. 1 Cir. 12/21/12); 111 So.3d 1095, 1098-99, the defendant was found guilty of eight counts of pornography involving juveniles. On appeal, he argued that the use of technology unavailable to the public to search his computer constituted an illegal, warrantless search. However, citing Dai-gle, the First Circuit found that the defendant’s right to privacy was not violated by the trooper’s use of “GNU Watch” to examine the SHA values for files the defendant had already elected to freely share with other “LimeWire” users. [See also U.S. v. Stults, 575 F.3d 834, 843 (8th Cir.2009), cert. denied, 559 U.S. 915, 130 S.Ct. 1309, 175 L.Ed.2d 1093 (2010), where the court held a defendant has no reasonable expectation of privacy in files retrieved from his personal computer where the defendant installed and used a file-sharing program; and, U.S. v. Ganoe, 538 F.3d 1117, 1127 (9th Cir.2008), cert. denied, 556 U.S. 1202, 129 S.Ct. 2037, 173 L.Ed.2d 1122 (2009), which held a defendant has no reasonable expectation of privacy in his computer when he installs and uses file-|sharing8 software, which opens his computer to anyone else with the same freely available program.]
Likewise, Defendant in the present case did not have a Fourth Amendment right to privacy in the contents of his computer, which he made available to the world by way of a peer-to-peer file-sharing network. Thus, we find Sgt. Wright’s search of computers using Wyoming Tool Kit was not illegal.

Administrative Subpoena

Defendant next argues the administrative subpoena issued by the Commonwealth of Virginia to Cox Communications for his subscriber information was unlawful because it was done without consent or probable cause. He asserts that the administrative subpoena issued by Virginia authorities to Cox “was not passed on by any judge,” and that Sgt. Wright obtained his subscriber information in a manner that would not be lawful in Louisiana.
At the suppression hearing, Sgt. Wright testified that he drafted an administrative subpoena to Cox Communications and received a response which stated that the subscriber for the IP address in question was “Tom Aston” in Louisiana, after which he forwarded the case to the Louisiana *1155 Attorney General’s Office. The administrative subpoena stated in pertinent part:
Your testimony and/or the production of the indicated records is required in the [sic] connection with an investigation or inquiry whereby there is reason to believe that the records or other information being sought are relevant to a legitimate law-enforcement investigation concerning violations of Code of Virginia
[[Image here]]
⅜ ⅜ ⅜ ⅜: $ ⅜
Pursuant to an ongoing child exploitation investigation being conducted by the Bedford County Sheriffs [sic] Office, you are hereby commanded to provide records or other information pertaining to a subscriber or customer of such service[.]
IsA defendant only has standing to challenge a subpoena issued without a showing of probable cause as an infringement of his Fourth Amendment right when he is able to claim a justifiable, reasonable, or legitimate expectation of privacy in the item seized. State v. Bone, 12-34 (La.App. 5 Cir. 9/11/12); 107 So.3d 49, 63, writ denied, 12-2229 (La.4/1/13); 110 So.3d 574, citing Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Defendant argues he had an expectation that the name and physical address related to his IP address would be kept private, based on a contract between him and Cox.
In United States v. Kennedy, 81 F.Supp.2d 1103, 1110 (D.Kan.2000), the court found the defendant’s constitutional rights were not violated when the internet service provider divulged his subscriber information to the government because he had no reasonable expectation of privacy in the information. The court reasoned that when the defendant entered into an agreement for internet services with Road Runner, a high speed internet service provider, he knowingly revealed all information connected to his IP address. As such, the court explained that the defendant could not claim to have a Fourth Amendment privacy interest in his subscriber information.
Additionally, in U.S. v. Cox, 190 F.Supp.2d 330, 332 (N.D.N.Y.2002), the court expressly determined that a criminal defendant has no Fourth Amendment privacy interest in subscriber information given to an internet service provider. In explaining its ruling, the court cited Smith v. Maryland, 442 U.S. at 743-44, 99 S.Ct. at 2582, wherein the United States Supreme Court stated that “a person has no legitimate expectation of privacy in information he voluntarily turns over to a third party.” [See also, U.S. v. Perrine, 518 F.3d 1196, 1205 (10th Cir.2008) (the defendant has no. Fourth Amendment privacy expectation in the subscriber information he gave to his internet service providers); and U.S. v. Sherr, 400 F.Supp.2d 843, 848 (D.Md.2005) (“The courts that have already addressed this issue ... uniformly have found that individuals have no Fourth Amendment privacy interest in. subscriber information given to an ISP.”) ]
Accordingly, we find that Defendant did not have a reasonable expectation of privacy with respect to subscriber information he gave to Cox, his internet service provider.

Lack of Independent Investigation for Search Warrant

Finally, Defendant asserts that the actual search of his residence after investigators obtained a search warrant was unlawful because it was based on an invalid search warrant that was obtained solely on the word of Sgt. Wright, an out-of-state policeman, without an independent investigation by the Louisiana Attorney General’s Office.
*1156 The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Thomas, 08-390 (La.App. 5 Cir. 1/27/09); 8 So.3d 80, 83, writ denied, 09-626 (La.11/25/09); 22 So.3d 170. If evidence is derived' from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. Id. A defendant who is adversely affected may move to suppress evidence from the use at the trial on the merits on the ground that it was unconstitutionally obtained. La.C.Cr.P. art. 703(A).
As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. State v. Holmes, 08-719 (La.App. 5 Cir. 3/10/09); 10 So.3d 274, 278, writ denied, 09-816 (La.1/8/10); 24 So.3d 857. A search warrant may be issued only upon probable cause established to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized. State v. Lee, 05-2098 (La.1/16/08); 976 So.2d 109, 122, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008). Probable cause for the issuance of a search warrant exists when the facts and circumstances, within the affiant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place that is to be searched. Id. at 122 (quotations omitted).
The facts establishing probable cause for the warrant must be contained within the four corners of the affidavit. State v. Green, 02-1022 (La.12/4/02); 831 So.2d 962, 969. An affidavit supporting a search warrant is presumed to be valid and the defendant has the burden of proving that the representations made in the affidavit are false. State v. Dee, 09-712 (La.App. 5 Cir. 2/23/10); 34 So.3d 892, 899, writ denied, 10-705 (La.10/29/10); 48 So.3d 1097.
The issuing magistrate must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, a fair probability exists that evidence of a crime will be found in a particular place. Green, 831 So.2d at 969. The magistrate’s determination of probable cause to issue a search warrant is entitled to significant deference on review, and “marginal cases should be resolved in favor of a finding that the issuing magistrate’s judgment was reasonable.” State v. Rodrigue, 437 So.2d 830, 833 (La.1983). Further, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, the reviewing court should interpret the affidavit in a realistic and common sense fashion, being aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. Green, 831 So.2d at 969. Within these guidelines, courts should strive to uphold warrants in order to encourage them use by police officers. Id. The reviewing court must ensure that |12under the totality of the circumstances, the issuing magistrate had a “substantial basis” for concluding that probable cause existed. Id.
In the instant case, the application for search warrant set forth in pertinent part:
On or about March 27, 2008, Investigators of the Louisiana Attorney General’s Office, High Technology Crimes Unit, received information from Terry Wright, Investigator for the Bedford County Sheriffs Office, Bedford County, VA, that an unknown suspect had uploaded files containing images of child pornography to the internet. On February 2, 2008 .at 2:40 pm, Investigator Wright was successful in locating a com *1157 puter used in sharing images of child pornography. The IP address linked to this computer was 72.200.25.21. Investigator Wright was able to determine the Internet Service Provider (ISP) to be Cox Communications. Wright was able to compare the file listing and the corresponding SHA 1 values to a list of SHA 1 values previously identified as depicted, confirmed, or suspected child pornography. The following SHA .l value is the file in the listing that Wright was able to capture in whole or part from the previously mentioned IP address:
2VNWKWDMRPXABXZHYBHX-STITVXA6VOHAF
Investigator Wright, upon examining the file, found it to be a video of what appears to be a white toddler female, less than 3 years of age, having her diaper changed, and then a male penetrates her vaginally with his penis. Wright concluded, based on his training and experience, that the search results indicate that a computer linked to the IP address, 72.200.25.21, was used in the distribution of child pornography, in violation of La.RS 14:81.1.
Through the subpoena process to Cox Communications for the IP Address 72.200.25.21, a return from Cox Communications provided the name and address of the person’s account assigned the IP address to be Tom Aston, 3100 Tennessee Ave., Kenner, Louisiana 70056-4740.
[[Image here]]
Information provided to this Investigator by Investigator Terry Wright revealed images of pornography involving Juveniles, connected to the address at 3100 Tennessee Ave., Kenner, Louisiana 70056-4740. [Emphasis as found in original.]
[[Image here]]
In U.S. v. Stults, 575 F.3d at 840, the court found the affidavit in support of the search warrant was based on probable cause. The court noted the information in the affidavit showed that through a peer-to-peer computer file sharing program, the agent was able to .access and download files directly from the defendant’s computer that contained child pornography images, and as a result, a.fair probability existed that contraband would be found at the defendant’s residence in his personal computer. Id., 575 F.3d at 843-44. Also, in U.S. v. Vosburgh, 602 F.3d 512, 526-27 (3rd Cir.2010), cert. denied, — U.S.-, 131 S.Ct. 1783, 179 L.Ed.2d 656 (2011), the court noted that several courts have held that evidence that the user of a computer employing a particular IP address possessed or transmitted child pornography can support a search warrant for the physical premises linked to that IP address.
In the present case, the information contained in the affidavit shows that Sgt. Wright located a computer used in sharing images of child pornography, compared the file listing and the corresponding SHA values to a list of SHA values previously identified as child pornography, examined the file and confirmed that it was child pornography, located the IP address linked to that computer, and determined that the IP address was assigned to “Tom Aston” at 3100 Tennessee Avenue in Kenner. Thus, we find the .search warrant at issue was based on probable cause.
Defendant argues that the affidavit in support of the search warrant was insufficient because it was based solely on Mr. Maranto’s summary of Sgt. Wright’s investigation, and not on Mr. Maranto’s own personal knowledge or investigation.
An affidavit may be based on hearsay, but “it must set forth the underlying circumstances and details sufficient to provide a factual basis by which the j ^magistrate might find reliable both the informant and the information given by him.” State v. Tomasetti, 381 So.2d 420, *1158 422 (La.1980): In this case, the information in the affidavit was supplied by a named law enforcement officer, Sgt. Wright. Information supplied by a named law enforcement officer is sufficient to support the credibility of the informant. Id. Additionally, Mr. Maranto stated in the affidavit that information provided to him by Sgt. Wright revealed images of child pornography connected to that address, demonstrating he did in fact verify the information provided. Further, Mr. Gohn, Mr. Maranto’s supervisor, testified at the suppression hearing that the complaint from Sgt. Wright was taken and reviewed and child pornography was found. We find this information was sufficient to provide the requisite probable cause needed to issue the search warrant. Thus, we find no error in the trial court denying Defendant’s motion to suppress the evidence.

ERRORS PATENT

In accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990), we have reviewed the record for errors patent. We note that the trial court did not impose the mandatory statutory fine. At the time of Defendant’s offense, the penalty for possession of pornography involving juveniles required a fine of “not more than ten thousand dollars.”[1] La. R.S. 14:81.1(E)(1). Because Defendant was convicted of attempted possession of pornography involving juveniles, he faced a mandatory fine of not more than five thousand dollars. La. R.S. 14:27(D)(3).
Although this Court has held that a statute providing for a fine of “not more than” a specified amount does require the imposition of a fine, the matter is not | ififree from doubt. State v. Kerlec, 06-838 (La.App. 5 Cir. 4/11/07); 957 So.2d 810, 815, writ denied, 07-1119 (La.12/7/07); 969 So.2d 626. Additionally, we recognize that Defendant’s sentence resulted from a guilty plea. Mindful that the appellate court should refrain from employing errors patent review to set aside guilty pleas about which a defendant makes no complaint and that result in disposition of the case favorable to the defendant, we decline to exercise our authority to correct the illegally lenient sentence. See State v. McGee, 09-102 (La.App. 5 Cir. 9/29/09); 24 So.3d 235, 242.

DECREE

For the foregoing reasons, Defendant’s conviction and sentence are affirmed.

AFFIRMED

. A defendant must be sentenced in accordance with the sentencing provisions in effect at the time of the commission of the offense. State v. Sugasti, 01-3407 (La.6/21/02); 820 So.2d 518, 520. We note that La. R.S. 14:81.1(E) has been amended since Defendant committed the offense and now provides for a mandatory fine of not more than fifty thousand dollars.