STATE OF LOUISIANA

VERSUS

ERIC RICHARDSON

NO. 18-KA-717

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 16-6969, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING


September 04, 2019


**ROBERT M. MURPHY, AD HOC
JUDGE**


Panel composed of Judges Marc E. Johnson,
John J. Molaison, Jr., and Robert M. Murphy, Ad Hoc


**AFFIRMED.**
    **RMM**
    **MEJ**
    **JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Paul D. Connick, Jr.
 Terry M. Boudreaux
 Thomas J. Butler
 Zachary P. Popovich

COUNSEL FOR DEFENDANT/APPELLANT,
ERIC RICHARDSON
 Gwendolyn K. Brown

DEFENDANT/APPELLANT,
ERIC RICHARDSON
 In Proper Person

**MURPHY, AD HOC, J.**

On appeal, defendant challenges his multiple narcotics convictions. For the following reasons, we affirm defendant's convictions and sentences.

**Factual and Procedural History**

In October of 2016, Lisa Cassara, a Parole Officer with the Louisiana Department of Corrections, Office of Probation and Parole, contacted Detective William Whittington of the Narcotics Division of the Jefferson Parish Sheriff's Office ("JPSO") to report that one of her parolees – a convicted cocaine distributor named Eric Richardson – was frequenting a known "high crime area" in Metairie after curfew. Based upon this information, Detective Whittington initiated an investigation of Richardson including electronic and traditional surveillance by law enforcement officers and interviews with confidential informants.

One of the informants described Richardson and his vehicle and stated that Richardson moved "large quantities" of heroin through Jefferson Parish so Detective Whittington decided to set up a controlled buy using the CI. On November 12, 2016, a team of narcotics enforcement officers from JPSO conducted surveillance of Richardson. Detective Gary Bordelon informed the team when Richardson drove away from his apartment in Kenner in the white Ford Explorer with temporary license plates as described by the CI. Detective Whittington, who was waiting with the CI, determined that the CI did not have any contraband in the CI's possession before interacting with Richardson.

Detective Whittington observed Richardson arrive at the location where the CI had arranged to make the controlled buy. Once at the location, Detective Whittington observed Richardson meet and interact with the CI and witnessed, based on his training, education, and experience, what Detective Whittington believed to be a hand-to-hand drug transaction. After the interaction, Richardson

left; the CI again met with Detective Whittington and provided Whittington with the heroin that the CI had purchased from Richardson.

Immediately, Detective Whittington prepared an affidavit and search warrant for Richardson's residence and vehicle. Coincidentally, the officers learned during their investigation that there was an outstanding attachment for Richardson. Once the warrants were obtained, the officers approached Richardson outside of his residence with the intent to arrest him on the outstanding attachment. When they made their identity as law enforcement known, however, Richardson fled into his backyard and into his apartment. Although a struggle ensued, Detective Whittington ultimately detained Richardson and read him his rights under *Miranda v. Arizona*.[1]

In the subsequent search of Richardson's residence and car pursuant to the warrant, including a small dirt area of the backyard specifically referred to by the CI, the officers recovered two plastic jars buried in the ground. In the first, there were approximately 78 grams of cocaine, 10 grams of heroin, 20 dosage units of Diazepam, and 5 dosage units of Tramadol. In the second, there were approximately 220 units of methamphetamine. Inside a backyard shed, the officers also recovered a leather satchel containing sandwich bags, a ceramic plate, and three digital scales.[2] Defendant was placed under arrest and read his *Miranda* rights; thereafter, defendant provided a statement to Detective Whittington admitting ownership of the narcotics and other items seized during the search.

On December 15, 2016, the Jefferson Parish District Attorney filed a bill of information charging defendant, Eric Richardson, with possession of cocaine

_____

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[2] Sergeant Joshua Collins, who the defense stipulated to as an expert in the field of narcotics investigations, packaging, and distribution, concluded that based on the evidence in this case, defendant possessed with the intent to distribute heroin and methamphetamine. Sergeant Collins concluded that the quantity, weight, and dosage units of the variety of types narcotics as well as the packaging of the narcotics in bundles and the presence of numerous digital scales indicates a mid-level distributor of narcotics.

between twenty-eight and two hundred grams, in violation of La. R.S. 40:967(F); possession with intent to distribute MDMA, in violation of La. R.S. 40:966(A); possession with intent to distribute heroin, in violation of La. R.S. 40:966(A); possession of Tramadol, in violation of La. R.S. 40:969(C); and possession of Diazepam, in violation of La. R.S. 40:969(C). On April 12, 2017, after receiving the scientific analysis of the contraband, the State filed a superseding bill of information amending count two to charge defendant with possession with intent to distribute methamphetamine, in violation of La. R.S. 40:967(A), rather than possession with intent to distribute MDMA. Defendant was re-arraigned on the superseding and amending bill and pled not guilty.

On April 18, 2018, after a bench trial, the trial judge found defendant guilty as charged on all five felony counts.[3] On May 22, 2018, the trial court sentenced defendant to fifteen years imprisonment at hard labor for possession of cocaine between twenty-eight and two hundred grams; to fifteen years at hard labor for possession with intent to distribute methamphetamine; to twenty years imprisonment at hard labor for possession with intent to distribute heroin; to five years imprisonment at hard labor for possession of Tramadol; and to five years imprisonment at hard labor for possession of Diazepam.[4] The trial court further ordered defendant's sentences to be served concurrently with each other and to any other sentence defendant may be serving.

On May 22, 2018, the State also filed a multiple offender bill of information alleging defendant to be a second felony offender. Defendant, after being advised of his rights, stipulated that he was a multiple felony offender. The trial court then

---

[3] On that day in Twenty-Fourth Judicial District Court case number 16-7309, defendant was also tried and found guilty of the misdemeanor offense of resisting an officer. Although this misdemeanor offense, which was charged by a separate bill of information, was tried at the same time as the felonies, it is not properly before this Court on appeal. *See* Defendant's Third Counseled Assignment of Error.

[4] The trial court also sentenced defendant on his misdemeanor conviction to serve six months in parish prison and ordered his misdemeanor sentence to run concurrently with the sentences imposed on his felony convictions.

vacated defendant's original sentence for his conviction for possession with intent to distribute heroin, and imposed an enhanced sentence under La. R.S. 15:529.1 of twenty-five years imprisonment at hard labor without benefit of probation or suspension of sentence. The trial court further ordered defendant's enhanced sentence to be served concurrently with his four original counts and recommended defendant for participation in any self-help, work release, re-entry, and substance abuse programs available through the Department of Corrections. Defendant now challenges his convictions.

## Discussion

On appeal, defendant has filed a counseled brief with three assignments of error: first, the trial court erred by denying the motion to reveal the identity of the confidential informant; second, the trial court erred by denying the motion for an *in camera* inspection; and, third, the evidence is insufficient to support the misdemeanor charge. Further, defendant filed a *pro se* brief with two assignments of error: first, the evidence was insufficient to support his convictions and, second, the trial court erred in denying his motion to suppress evidence.

### *Sufficiency of the Evidence*

When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. *Id.* Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. *Id.*; *See also State v. Nguyen*, 05-569 (La. App. 5 Cir. 2/3/06), 924 So.2d

18-KA-717                                                    4

258, 262. Thus, we will address defendant's *pro se* assignment of error regarding the sufficiency of the evidence first.

In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00-0674 (La. 6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

In cases involving circumstantial evidence, the trial court must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Mitchell*, 99-3342 (La. 10/17/00), 772 So.2d 78, 83; *State v. Washington*, 03-1135 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 977.

In this case, defendant was convicted of five counts of narcotics possession: possession of cocaine between twenty-eight and two-hundred grams; possession with intent to distribute methamphetamine; possession with intent to distribute heroin; possession of Tramadol; and possession of Diazepam. Although there are different elements required to support these five crimes, defendant only challenges the State's alleged failure to prove the element of possession beyond a reasonable doubt for each of the counts.

In Louisiana, the element of possession may be established by showing defendant exercised either actual or constructive possession of the substance. *State v. Lewis*, 04-1074 (La. App. 5 Cir. 10/6/05), 916 So.2d 294, *writ denied*, 05-2382 (La. 3/31/06), 925 So.2d 1257. A person not in physical possession of the drug is considered to be in constructive possession of the drug, even though the drug is not in his physical custody, when it is under that person's dominion and control. *Id.* The key factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the defendant's knowledge that illegal drugs were in the area, his relations with a person found to be in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use by the defendant, the existence of drug paraphernalia, and evidence that the area was frequented by drug users. *Id.*; *State v. Manson*, 01-159 (La. App. 5 Cir. 6/27/01), 791 So.2d 749, 761, *writ denied*, 01-2269 (La. 9/20/02), 825 So.2d 1156. "Mere presence in an area where drugs are found or mere association with the person in actual possession does not constitute constructive possession." *State v. Jones*, 04-1258 (La. App. 5 Cir. 4/26/05), 902 So.2d 426, 431. However, "[p]roximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence." *Id.*

In the instant case, defendant's parole officer reported that his movements, which were electronically monitored, revealed that he was frequenting a high crime area and violating his curfew. Under surveillance by narcotics officers from JPSO, a confidential informant conducted a controlled buy of heroin from defendant, which gave the officers probable cause to obtain a search warrant for defendant's residence.[5] After being read his *Miranda*[6] rights and being informed

---

[5] Defendant's address was confirmed by his parole officer at trial.

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

that a search of the premises would be conducted, defendant admitted, "whatever you find is mine." The search disclosed approximately 78 grams of cocaine, 10 grams of heroin, 20 dosage units of Diazepam, 5 dosage units of Tramadol, and 221 units of methamphetamine buried in two plastic bottles in a small area of "disturbed dirt" surrounded by grassy area in defendant's backyard. Inside a nearby shed in the backyard, the officers also recovered a leather bag containing sandwich bags, a ceramic plate, and three digital scales.

After discovery of the narcotics, defendant was placed under arrest and advised of his *Miranda* rights. During his subsequent statement to Detective Whittington, defendant admitted that he alone owned the narcotics and other items seized during the search. Evidence concerning defendant's prior convictions for possession with intent to distribute heroin and possession of over 28 grams of cocaine was also admitted at trial under La. C.E. art. 404(B).

Defendant's admissions, coupled with his access to the area where the drugs were found, defendant's prior drug activities, and existence of paraphernalia, are sufficient to satisfy the possession element of the charged offenses. Thus, based on the testimony presented at trial and the factors discussed in *Lewis*, *supra*, we find that the State produced sufficient evidence to show defendant constructively possessed the drugs found in his backyard and, therefore, find the evidence is sufficient under the *Jackson* standard to support the convictions.

In his second *pro se* assignment of error, defendant argues that the trial court erred in refusing to suppress the narcotics confiscated from his backyard, which ultimately led to his convictions. He maintains that the search of his backyard was outside the parameters of the search warrant, which violated his Fourteenth Amendment right. Defendant further contends the warrant itself was deficient as it was based upon information from an unnamed informant with no indication as to the informant's truthfulness or reliability.

During the suppression hearing and at trial, Detective Whittington testified regarding his investigation into defendant's suspected drug activity. At the conclusion of the hearing, defendant argued that the evidence and statement should be suppressed because the warrant was based on information from a CI that lacked credibility and because Detective Whittington had failed to put certain facts from the affidavit into the warrant that supplied the probable cause.

The State, in turn, argued that the information the CI provided concerning defendant was independently corroborated, and the search warrant was validly obtained based on probable cause garnered from the controlled buy between defendant and the CI. The State further maintained that the search warrant was not invalid simply because additional inculpatory information was not placed in the application. After listening to the arguments of counsel, the trial court denied defendant's motions to suppress.

Defendant now raises on appeal two arguments in support of his position that his motion to suppress evidence should have been granted. First, he alleges that the search of his backyard was done in violation of his Fourteenth Amendment right because it was outside the parameters of the search warrant which only provided for the search of his residence. However, defense counsel did not argue this basis for suppression in either his written motion to suppress or at the motion to suppress hearing.

Articulating a new basis for the motion to suppress for the first time on appeal is prohibited under La. C.Cr.P. art. 841, since the trial court would not be afforded an opportunity to consider the merits of the particular claim. *State v. Berroa-Reyes*, 12-581 (La. App. 5 Cir. 1/30/13), 109 So.3d 487, 496 (citing *State v. Harris*, 414 So.2d 325 (La. 1982)). Louisiana courts have long held a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress. *State v. Montejo*, 06-1807 (La. 5/11/10),

40 So.3d 952, 967, *cert. denied*, 562 U.S. 1082, 131 S.Ct. 656, 178 L.Ed.2d 513 (2010); *see also* La. C.Cr.P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."); *State v. Simmons*, 422 So.2d 138 (La. 1982); *Harris*, *supra*; *State v. Davis*, 357 So.2d 1125 (La. 1978); *State v. Carter*, 10-973 (La. App. 5 Cir. 8/30/11), 75 So.3d 1, *writ denied*, 11-2060 (La. 2/10/12), 80 So.3d 469 (holding defendant waived the argument that evidence should be suppressed because the search exceeded the scope of the search warrant when the defense counsel never asked the trial judge to rule on the "constitutionally overbroad" issue asserted for the first time on appeal); *State v. Brown*, 434 So.2d 399 (La. 1983) (rejecting defendant's alternative argument regarding the denial of his motion to suppress because he had not raised the issue at trial); *State v. Johnson*, 07-1040 (La. App. 4 Cir. 9/10/08), 993 So.2d 326, 330-31, *writ denied*, 08-2649 (La. 6/5/09), 9 So.3d 868 ("failure to raise a ground for suppressing an item of evidence in a properly filed motion to suppress waives such a basis for exclusion on appeal"); *State v. Jackson*, 04-1388 (La. App. 5 Cir. 5/31/05), 904 So.2d 907, 911, *writ denied*, 05-1740 (La. 2/10/06), 924 So.2d 162 (defendant is limited on appeal to the grounds he articulated at trial and a new basis for a claim, even if it would be meritorious, cannot be raised for the first time on appeal). Accordingly, we find that defendant has waived the argument that the evidence should have been suppressed because the location searched was outside of the scope of the warrant.

Second, defendant asserts the warrant itself was deficient because it was lacking in probable cause having been based upon information from an unnamed informant with no indication as to the informant's truthfulness or reliability.

The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. *State v. Thomas*, 08-390 (La. App. 5 Cir. 1/27/09), 8 So.3d 80, 83, *writ denied*, 09-0626

(La. 11/25/09), 22 So.3d 170. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. *Id.* A defendant who is adversely affected may move to suppress evidence from the use at the trial on the merits on the ground that it was unconstitutionally obtained. La. C.Cr.P. art. 703(A).

As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. *State v. Gaubert*, 14-396 (La. App. 5 Cir. 12/16/14), 167 So.3d 110, 114. A search warrant may be issued only upon probable cause established to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized. *Id.* Probable cause for the issuance of a search warrant exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. *Id.* The determination of probable cause does not rest on an officer's subjective beliefs or attitudes but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action. *Id.* A search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized. *Id.*

When evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a hearing on his motion to suppress that evidence. *State v. Falcon*, 13-849 (La. App. 5 Cir. 3/12/14), 138 So.3d 79, 88, *writ denied*, 14-769 (La. 11/14/14), 152 So.3d 877 (citing La. C.Cr.P. art. 703(D)). A trial court has great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. *State v. Ables*, 16-538 (La. App. 5 Cir.

2/8/17), 213 So.3d 477, 482, *writ denied*, 17-488 (La. 11/28/17), 230 So.3d 221; *State v. Nicholas*, 06-903 (La. App. 5 Cir. 4/24/07), 958 So.2d 682, 686.

The task for a reviewing court is simply to ensure that under the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed. *State v. Payne*, 10-46 c/w 10-47 (La. App. 5 Cir. 1/25/11), 59 So.3d 1287, 1296, *writ denied*, 11-0387 (La. 9/16/11), 69 So.3d 1141. Within its four corners, an affidavit must contain the facts establishing the existence of probable cause for issuing the warrant. *Id.* Moreover, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, the reviewing court should interpret the affidavit in a realistic and common sense fashion, being aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. *State v. Bonilla*, 15-529 (La. App. 5 Cir. 2/24/16), 186 So.3d 1242, 1260, *writ denied*, 16-0567 (La. 5/2/16), 206 So.3d 881, *cert. denied*, -- U.S. --, 137 S.Ct. 239, 196 L.Ed.2d 183 (2016). Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers. *Id.*

At the motion to suppress hearing, Detective Whittington testified that he prepared an affidavit for a search warrant for defendant's residence. The affidavit for the warrant was presented to Commissioner Patricia Joyce, who after finding probable cause, issued the search warrant. During the hearing, the affidavit for the search warrant was introduced into evidence, and the trial court listened to the testimony of Detective Whittington regarding the information provided by the CI, which formed the basis of probable cause for the search warrant.

Among the facts provided, it was relayed that Detective Whittington had received information from a reliable and credible CI regarding narcotics trafficking by defendant from his residence at 1600 Newport Place. The CI provided a description of defendant, his date of birth, and a description of the vehicle he

drove. In the affidavit, Detective Whittington further discussed the CI's firsthand knowledge of defendant's unlawful activities due to having purchased narcotics from him in the past. Also in the affidavit, Detective Whittington described the controlled buy that took place between the CI and defendant for heroin. He asserted that defendant had informed the CI during the controlled buy that he was in possession of additional quantities of heroin and should contact him if more was desired.

During the hearing, Detective Whittington discussed in detail his working relationship with the CI, confirming that the CI had previously proven reliable, having provided information to him on prior occasions that led to narcotics arrests. Moreover, Detective Whittington was able to corroborate the information given by the CI regarding the specific type of vehicle defendant drove, where he was residing, and where the narcotics would be located. Under the totality of the circumstances, we find a sufficient basis upon which the trial court could have found probable cause for the issuance of the search warrant in this case. *Gaubert*, 167 So.3d at 115; *State v. Robinson*, 03-1350 (La. App. 5 Cir. 3/30/04), 871 So.2d 575, 580, *writ denied*, 04-1081 (La. 11/15/04), 888 So.2d 767 (citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). And while the veracity, reliability, or basis of knowledge of a CI is relevant in evaluating probable cause, it is not the determining factor. *Id*.

Accordingly, we find no abuse of the trial court's discretion in denying defendant's motion to suppress the evidence obtained from the execution of the search warrant.

Returning to defendant's counseled assignments of error, we will address the first and second assignments of error, which are related, together. In them, defendant argues that he was denied his right to confront his accusers and his right to present a defense as a result of the trial court's failure to disclose to him the

identity of the CI or, at a minimum, conduct an *in camera* inspection of the CI to determine the CI's reliability. Defendant argues that there was no independent source other than the CI for the information that led to the discovery of the narcotics, which formed the basis for the charged offenses. Defendant maintains that the search warrant was based wholly upon the alleged controlled buy that occurred between himself and the CI and that the buy was not directly witnessed by any police officer or otherwise corroborated. Accordingly, defendant concludes the credibility of the CI was integral to the State's case and without means to confront the CI or assess his credibility, the State was permitted to circumvent constitutional safeguards to obtain the convictions against defendant.

As previously noted, a suppression hearing was held prior to trial. During that hearing, Detective Whittington testified that he was initially contacted by defendant's parole officer regarding suspicious activity recorded by defendant's electronic tracking device. Narcotics officers conducted brief surveillance of defendant but did not observe illegal activity. Detective Whittington recalled that a short time later he received information from a CI that defendant was "distributing quantities of heroin throughout Metairie." According to Detective Whittington, he had worked with the CI in the past and confirmed that the CI had previously proven reliable, having provided information on prior occasions that led to arrests and narcotics seizures. The CI further informed Detective Whittington of the specific type of vehicle defendant drove and where he was residing. The CI indicated that he/she was in a position to purchase a quantity of heroin from defendant, so Detective Whittington set up the CI to conduct a controlled buy.

Detective Whittington explained that after setting up surveillance on defendant's residence, defendant was observed leaving the premises in the vehicle described by the CI. Then, after following defendant to the pre-determined location, the CI met with defendant and obtained a quantity of heroin, which the CI

then relinquished to Detective Whittington. Detective Whittington testified that he searched the CI both before and after the controlled buy to ensure the CI was not in possession of any illegal items. The detective was also able to continuously view the CI from the time the CI left him until the time the CI met with defendant, noting that the CI did not interact with any other person.

After the controlled buy, the CI contacted Detective Whittington to provide him with defendant's address while other officers from the team followed defendant back to his residence. In the meantime, Detective Whittington obtained a search warrant for defendant's residence and vehicle. During the execution of the warrant, narcotics were found buried in defendant's backyard in a location where the CI, who was familiar with defendant's home, had indicated the contraband had been located.

On cross-examination, defense counsel asked Detective Whittington how much money was given to the CI to use during the controlled buy. Detective Whittington stated that such information would reveal the identity of the informant; thus, he was instructed by the trial court not to answer. Defense counsel then indicated that he would be filing a motion for *in camera* inspection requesting the trial judge to meet with the CI and engage in a colloquy with him/her about the information he/she provided to Detective Whittington so as to determine his/her credibility and/or existence.

Accordingly, after the trial court's ruling denying the motions to suppress, defendant filed a motion for *in camera* inspection to determine the reliability of the CI. The defendant filed a *pro se* motion to reveal the identity of the CI, asserting that the CI participated in the alleged criminal transaction and that non-disclosure of the CI's identity would deny him his constitutional rights of confrontation and compulsory process.

At the hearing on these motions, the State argued there was no basis to disclose the identity of the CI in this case. It noted that defendant was not charged with distribution of the narcotics sold to the CI during the controlled buy, and that as a result, there existed no exceptional circumstances warranting the exposure of the CI's identity or for an *in camera* inspection to test the CI's credibility.

In response, defendant maintained that the CI played a crucial role in the case and admitted that while defendant was not charged with the offense of distribution of the narcotics to the CI, the controlled buy between defendant and the CI formed the basis for the search warrant. Accordingly, defendant argued an *in camera* inspection should be conducted with the CI to gauge the CI's credibility. Defendant averred that if the trial court were to engage in a colloquy with the CI, it could determine whether the CI was truthful and whether a controlled buy had, in fact, taken place. The trial court denied the motion to disclose the identity of the CI and defendant's request for an *in camera* inspection.

Absent exceptional circumstances, a confidential informant's identity is strictly privileged. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *State v. Oliver*, 430 So.2d 650, 652-53 (La. 1983), *cert. denied*, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); *State v. Clark*, 05-61 (La. App. 5 Cir. 6/28/05), 909 So.2d 1007, 1014 n.18, *writ denied*, 05-2119 (La. 3/17/06), 925 So.2d 538 (citing *State v. Broadway*, 96-2659 (La. 10/19/99), 753 So.2d 801, 815, *cert. denied*, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000)). Established jurisprudence recognizes the "informer's privilege," which allows the state to withhold the identity of those who furnish information of illegal activities to law enforcement officers. *Roviaro*, 353 U.S. at 59, 77 S.Ct. at 627; *State v. Davis*, 411 So.2d 434, 436 (La. 1982); *see also* La. C.E. art. 514.[7] This privilege is founded

_____

[7] La. C.E. art. 514(A), pertinent to the issues presented herein, provides:

upon public policy and seeks to further and protect the public interest and law enforcement by encouraging people to supply information to the police by protecting their anonymity. *Clark*, 909 So.2d at 1014-15, 1015 n.19 (citing *Roviaro*, 353 U.S. at 59, 77 S.Ct. at 627).

However, exceptions to this privilege exist. *See* La. C.E. art. 514(C).[8] The identity of an informant should be made known to the accused only when his right to prepare his defense outweighs the need for protection of the flow of information. *Clark*, 909 So.2d at 1015 n.20 (citing *State v. Zapata*, 97-1230 (La. App. 5 Cir. 5/27/98), 713 So.2d 1152, 1158, *writ denied*, 98-1766 (La. 11/6/98), 727 So.2d 443). The burden is on the defendant to show exceptional circumstances warranting disclosure of the name of a confidential informant. *Clark*, 909 So.2d at 1015. The trial court is vested with great discretion in determining when circumstances warrant disclosure. *Id.*; *Scher v. United States*, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151 (1938).

Only when an informant has played a crucial role in the criminal transaction and when he alone can give testimony necessary to insure a fair trial, ***must*** the trial court order disclosure of his identity. *State v. Coleman*, 97-2802 (La. 4/24/98), 713 So.2d 440, 441-42; *State v. Dotson*, 256 So.2d 594, 599-600 (La. 1971), *cert. denied*, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972). Conversely, when an informant only supplies information, and does not participate in the transaction, disclosure is not warranted. *Clark*, 909 So.2d at 1015, n.24 (citing *Zapata*, *supra*).

In *Clark*, *supra*, the trial court denied the defendant's pretrial motion to reveal the identity of the informant. This Court found that the trial court had not

---

The United States, a state, or subdivision thereof has a privilege to refuse to disclose, and to protect another from required disclosure of, the identity of a person who has furnished information in order to assist in an investigation of a possible violation of a criminal law.

[8] La. C.E. art. 514(C)(3) states that no privilege shall be recognized if "[t]he party seeking to overcome the privilege clearly demonstrates that the interest of the government in preventing disclosure is substantially outweighed by exceptional circumstances such that the informer's testimony is essential to the preparation of the defense or to a fair determination on the issue of guilt or innocence."

erred in denying the motion because although the CI's drug purchase supplied the probable cause necessary to obtain the search warrant, the informant's participation was not integral to the transaction (i.e., the search) that uncovered the cocaine that was the basis for the instant charge. This Court explained that the defendant was not charged with the distribution of the cocaine to the CI but with possession of cocaine with intent to distribute that occurred on a later date.

In *State v. Smith*, 09-259 (La. App. 5 Cir. 11/24/09), 28 So.3d 1092, *writ denied*, 10-1414 (La. 6/24/11), 64 So.3d 212, the defendant argued on appeal that the trial court erred in restricting his ability to test the affidavit of the search warrant, which he alleged relied exclusively upon the credibility of an informant. He further argued that in order to test the affidavit, it was essential to test the informant's credibility, thus, concluding that the trial court's failure to order disclosure of the informant's identity based on the exceptional facts of the case was error. This Court disagreed, noting that the affiant of the probable cause affidavit and search warrant had observed the transaction between the defendant and the CI firsthand. Further, this Court found the defendant did not present exceptional circumstances requiring disclosure, explaining that the cocaine found when the search warrant was executed, and not the evidence seized from the controlled buy between the defendant and the CI, formed the basis for the charged offense. This Court also noted that while the CI was a source of the basis of the probable cause required for the search warrant, that fact did not, in and of itself, require disclosure of the informant's identity. Accordingly, this Court concluded the CI did not play a crucial role in the transaction that led to the defendant's arrest because he played no part in the execution of the search warrant and the search of the defendant's person.

Finally, in *State v. Baker*, 15-401 (La. App. 5 Cir. 11/19/15), 179 So.3d 895, *writ denied*, 15-2350 (La. 4/22/16), 191 So.3d 1046, the defendant argued on

appeal that the trial court erred in not revealing the identity of the CI who participated in a hand-to-hand transaction with the defendant days before his arrest. This Court found the defendant failed to show that he was entitled to know the identity of the CI and that the charges in the case were based on the evidence found when the officers arrested the defendant on his outstanding attachments, not on the evidence seized from the controlled buy between the defendant and the CI. This Court further noted that the officer testified that he personally observed the controlled buy between the informant and the defendant.

Based on the foregoing, we find that the trial court did not err in finding that the defendant was not entitled to know the identity of the CI, even though the CI was a source of the basis of the probable cause required for the search warrant. The charges in this case were based on the narcotics found when the search warrant was executed and not based on the evidence seized from the controlled buy between defendant and the CI. Here, the CI did not play a crucial role in the transaction that led to defendant's arrest because the CI played no part in the execution of the search warrant. Accordingly, defendant has not presented exceptional circumstances that required disclosure of the CI's identity, and as such, the trial judge did not err in disallowing the disclosure of the CI's identity.

Further, we find no basis in the law for defendant's motion to conduct an *in camera* inspection with the CI to ascertain the CI's reliability. While the *in camera* inspection of certain documents have been ordered under certain circumstances involving privileged information,[9] we find the *in camera* inspection of a CI to be outside the scope of what defendant is entitled to under the rules of criminal procedure. No jurisprudence could be located and defendant fails to cite to any case where the CI was produced for an *in camera* interview with the trial

---

[9] *See State v. Cobb*, 419 So.2d 1237 (La. 1982); *State v. Perkins*, 03-1680 (La. 6/27/03), 852 So.2d 989; *State v. Smith*, 01-1027 (La. App. 1 Cir. 2/15/02), 809 So.2d 556; *State v. Berry*, 95 1610 (La. App. 1 Cir. 11/8/96), 684 So.2d 439, *writ denied*, 97-0278 (La. 10/10/97), 703 So.2d 603.

court in order to verify his/her credibility. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for an *in camera* inspection to independently ascertain the reliability of the CI.

In his final counseled assignment of error, defendant avers that the evidence was insufficient to support his misdemeanor charge of resisting an officer when there was no evidence presented that he was informed he was under arrest prior to his "fleeing."[10]

Our review of the record on appeal reveals that our appellate jurisdiction does not extend to this matter. Here, defendant was charged in a separate bill of information with a misdemeanor offense distinct from his felony charges. Specifically, defendant's felony offenses were assigned district court case number 16-6969, while defendant's misdemeanor offense of resisting an officer was assigned district court case number 16-7309. Further, although defendant's felony and misdemeanor offenses were tried together in a bench trial, the record on appeal does not contain defendant's misdemeanor case. Additionally, the motions for appeal contained in the record mention only the felony convictions and were filed listing the felony case number only.[11]

This Court's appellate jurisdiction extends only to cases that are triable by a jury. *State v. Chess*, 00-164 (La. App. 5 Cir. 6/27/00), 762 So.2d 1286, 1287 (citing La. Const. of 1974, art. 5 § 10; La. C.Cr.P. art. 912.1). Unless the punishment that may be imposed exceeds six months imprisonment, a misdemeanor is not triable by a jury. *Chess*, *supra* (citing La. Const. of 1974, art. 1 § 17; La. C.Cr.P. art. 779; *State v. Robinson*, 94-864 (La. App. 5 Cir. 3/15/95),

---

[10] The proper procedure for seeking review of a misdemeanor conviction is an application for writ of review seeking exercise of this Court's supervisory jurisdiction. La. C.Cr. P. art. 912.1(C)(1).

[11] The substance of both motions for appeal was general in nature; however, the orders regarding the motions summarized the case as follows: "defendant was found guilty on April 18, 2018 and sentenced on May 22, 2018 for drug offenses and to being a second time felony offender." The motion did not refer to defendant's misdemeanor conviction.

653 So.2d 669, 670). Here, defendant's offense of resisting an officer was punishable by a fine of not more than five hundred dollars or imprisonment for not more than six months, or both. *See* La. R.S. 14:108(C). It is, thus, not triable by a jury. As the misdemeanor conviction was not triable by a jury, our appellate jurisdiction does not extend to this matter. Accordingly, this assignment of error is not before us.

## Errors Patent

Finally, as is our routine practice, we have reviewed the record for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). We find no errors requiring corrective action.

## Conclusion

For the foregoing reasons, we affirm all five of defendant's narcotics convictions - including possession of cocaine between twenty-eight and two-hundred grams; possession with intent to distribute methamphetamine; possession with intent to distribute heroin; possession of Tramadol; and possession of Diazepam – and defendant's original sentences; defendant's second felony offender adjudication and enhanced sentence.

**AFFIRMED.**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **SEPTEMBER 4, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____
**MARY E. LEGNON**
INTERIM CLERK OF COURT

## 18-KA-717

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
GWENDOLYN K. BROWN (APPELLANT)      TERRY M. BOUDREAUX (APPELLEE)          THOMAS J. BUTLER (APPELLEE)

### MAILED

ERIC RICHARDSON #125418 (APPELLANT)     HON. PAUL D. CONNICK, JR. (APPELLEE)
RAYBURN CORRECTIONAL CENTER             ZACHARY P. POPOVICH (APPELLEE)
27268 HIGHWAY 21                        ASSISTANT DISTRICT ATTORNEYS
ANGIE, LA 70426                         TWENTY-FOURTH JUDICIAL DISTRICT
                                        200 DERBIGNY STREET
                                        GRETNA, LA 70053